

_____
ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| JOHN E. HARMS, JR. & | * | Case No: 09-22090-RAG |
| ASSOCIATES, INC. , | * | Chapter 11 |
| Debtor | * | |
| JOHN E. HARMS, JR. & | * | |
| ASSOCIATES, INC., | * | Adversary Proceeding No.: 09-00581 |
| Plaintiff | * | |
| v. | * | |
| JOHN TEKMAN, *et al.*, | * | |
| Defendants | * | |

**MEMORANDUM OPINION**

I.  **Preliminary Statement**

This dispute arises out of an Adversary Proceeding commenced on September 2, 2009 by

Plaintiff John E. Harms, Jr. & Associates, Inc. (Plaintiff) with the filing of a Complaint (Dkt. No.

1) that alleged claims for the avoidance of unauthorized postpetition transfers, the recovery of

1

property, breach of contract, fraud, misappropriation, conversion, and a civil conspiracy.  The Defendants John Tekmen (Mr. Tekmen) and ILKEM, LLC (ILKEM) (collectively, Defendants) failed to file or serve a written response.  After the response period lapsed the Plaintiff filed a Verified Motion for Default Judgment (Motion for Default) (Dkt. No. 5) on October 8, 2009 which was not responded to and was granted on November 3, 2009 by Order Granting Judgment Against John Tekman and ILKEM, LLC By Default (Default Judgment) (Dkt. No. 11).   Over two months later, Defendants, represented by counsel, finally took action by the filing, on January 12, 2010, of John Tekmen and ILKEM, LLC's Motion to Vacate Entry of Default (Motion to Vacate) (Dkt. No. 14).   The question presented is whether the Motion to Vacate should be granted, or more specifically, whether the doctrine of excusable neglect permits the Defendants to sidestep their significant lapse in diligence.  As explained below, the Court determines that the answer is 'no'.

## II.    Factual Background and Procedural History

The Plaintiff is an engineering firm.  According to the Complaint[1], Plaintiff contracted with the Defendants to provide services for Georgetown Village Business Park (Business Park) in Georgetown, Delaware.  Subsequently, on July 2, 2009, the Plaintiff filed its Voluntary Petition for relief in the United States Bankruptcy Court for the District of Maryland (Case No. 09-22090).  When he learned of the bankruptcy filing, Mr. Tekmen demanded the return of all plans, survey data, records, contracts, and other intellectual property in Plaintiff's possession and related to the Business Park project.  In response, Plaintiff told Mr. Tekmen that the total sum of

---

[1] The Motion to Vacate sets forth a materially different, and more detailed, scenario of the underlying facts from that included in the Complaint.  However, as there is no material disagreement over the facts that unfolded after the Complaint's filing, and in light of the Court's ruling, it will be unnecessary to decide which version of the underlying facts is true.

$6,118.74 would have to be paid before any items would be returned. On July 27, 2009 Mr. Tekmen visited the Plaintiff's office and paid the sum due using a check drawn on ILKEM's account. In exchange, Mr. Tekmen was given documents (apparently loaded on a memory stick) related to Georgetown Business Park. However, on or about August 3, 2009, payment on the check was stopped by Mr. Tekmen and ILKEM.

Plaintiff thereafter filed the Complaint.[2] There is no dispute as to the following events that took place after the Complaint was filed:

a. A Summons and Notice of Pretrial Conference (Summons) (Dkt. No. 3) was issued by the Clerk on September 3, 2009. As indicated in that document, the pretrial conference was scheduled for October 19, 2009;

b. On September 4, 2009 Plaintiff forwarded copies of the Summons and the Complaint to both Mr. Tekmen and the registered agent for ILKEM;

c. On September 7, 2009 Mr. Tekmen was served with the Complaint and Summons;

d. The Defendants' written response to the Complaint was due to be filed by October 5, 2009. The Summons contained the following, conspicuous language:

> You are hereby summoned and required to file with this court and to serve upon the plaintiff or the plaintiff's attorney … either a motion or an answer to the complaint which is now served upon you.
>
> … [Y]ou are required to serve your answer upon plaintiff's attorney within 30 days of the date of issuance of this by the clerk ….

---

[2] Plaintiff sent the Defendants a demand letter on August 26, 2009.

3

> The motion or answer served by you must be filed with this court either before service or within a reasonable time after service. IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS SUMMONS, JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED BY THE COMPLAINT;

e. The Defendants did not answer or otherwise plead to the Complaint;

f. On October 8, 2009 Plaintiff filed the Motion for Default;

g. Copies of the Motion for Default were mailed to Mr. Tekmen and the registered agent for ILKEM;

h. No response was filed to the Motion for Default;

i. On October 9, 2009 a Clerk's Entry of Default (Defaults) (Dkt. No. 7) was made as to both the Defendants;

j. On October 10, 2009 Mr. Tekmen received notice of the Defaults;

k. On October 12, 2009 the Defendants hired Roland Gary Jones, Esquire (Counsel) to represent them in this case;

l. On November 3, 2009 the Default Judgment was entered by the Court; and

m. On January 12, 2010 more than 120 days after the service of the Summons and Complaint, more than 90 days after the entry of the Defaults, and more than 70 days after the entry of the Default Judgment, the Defendants filed the Motion to Vacate.

The Plaintiff filed an Opposition to the Motion to Vacate (Opposition) (Dkt. No. 15) on January 21, 2010.

**III.     Jurisdiction and Venue**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O).

**IV.     Analysis**

As it must, the Motion to Vacate relies upon Federal R. Civ. P. 55(c) and Federal R. Civ. P. 60(b) as made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7055 and Fed. R. Bankr. P. 9024, respectively.[3] Federal Rule 60(b) provides in relevant part that, "on motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . (1) mistake, inadvertence, surprise, or excusable neglect."   The Defendants reliance upon Federal Rule 60(b) is limited to the doctrine of excusable neglect, the only ground cited.

A party must make a significant showing in order to obtain relief under Rule 60(b).  The Court's decision is discretionary, properly guided by the controlling principles.  *McLawhorn v. John W. Daniel Co., Inc.*, 924 F.2d 535, 538 (4th Cir. 1991).  The core of these principles is set forth in *Park Corporation v. Lexington Insurance*, 812 F.2d 894, 896 (4th Cir. 1987),

> As we have stated in previous cases, in order to obtain relief from a judgment under Rule 60(b), a moving party must show that his motion is timely, that he has a meritorious defense to the action, and that the opposing party would not be unfairly prejudiced by having the judgment set aside.  If the moving party makes such a showing, he must then satisfy one or more of the six grounds for relief set forth in Rule 60(b) in order to obtain relief from the judgment.  *See*, *e.g.*, *Werner v. Carbo, Jr.*, 731 F.2d at 204, 206-07

---

[3] Hereafter, the title 'Federal Rules' shall be used for all citations to the Federal Rules of Civil Procedure while 'Bankruptcy Rules' shall be used for all citations to the Federal Rules of Bankruptcy Procedure.

(4th Cir. 1984); *Compton v. Alton Steamship Co.*, 608 F.2d 96, 102 (4th Cir. 1979).[4]

For the reasons indicated in footnote 4, and as the question of prejudice must be addressed in this context, the Court will proceed to the question of whether the doctrine of excusable neglect should apply to vacate the Default Judgment.

In *Pioneer Inv. Servs. Co. v. Brunswick Associates, Ltd.,* 507 U.S. 380, 113 S. Ct. 1490, 123 L.Ed.2d 74  (1993) the Supreme Court set-out the criteria to be applied to determine excusable neglect when a party seeks an enlargement of time after the allowed period has expired pursuant to Bankruptcy Rule 9006(b)(1).[5] Petitioner, the non-moving party below, argued that 'neglect' should be interpreted to include only those circumstances where the party is prevented from complying with a deadline due to circumstances beyond her reasonable control. The Court disagreed and determined that the word should be given its ordinary meaning with the result that it would encompass both unpreventable, and careless, lapses. 507 U.S. at 388, 113 S.Ct. at 1494 – 95, 123 L.Ed 2d at 85; *accord Resolution Trust Corp. v. SPR Corp. (In re SPR Corp.),* 45 F.3d 70, 72 (4th Cir. 1995) (*qtd. in Sikes v. Swann (In re Swann),* 2007 Bankr. LEXIS 2077 (Bankr. D. Md. 2007)).  However, the neglect must also be 'excusable' and in the words of

---

[4] Pursuant to Federal Rule 60(c)(1), the Motion to Vacate was filed in a timely fashion.  Moreover, the Defendants have asserted that the Plaintiff breached its contract with them and therefore they were entitled to stop payment on the check.  Md. Code Ann. Comm. Law Art. §3-305 lists breach of contract as a defense to the obligation of a party to pay an instrument.   The Plaintiff did not seriously dispute the assertion of a meritorious defense and therefore it must be conceded that one exists.  However, that is not dispositive as the Defendants still must establish the absence of prejudice and, moreover, a basis for finding excusable neglect.  *Park Corp.*, 812 F.2d at 896.

[5] Although the specific holding of *Pioneer* was made in the context of a post-expiration extension of time under Bankruptcy Rule 9006(b) the Court found significant support for its analysis from cases interpreting excusable neglect in the context of the Federal Rules generally and specifically, Federal Rule 60(b). 507 U.S. at 391, 113 S.Ct. at 1496, 123 L.Ed. 2d at 87. A few years later, the Fourth Circuit held that *Pioneer's* standard for determining excusable neglect can apply in other, non-bankruptcy situations where the rubric is mandated. *Thompson v. E.I. DuPont de Nemours & Co., Inc.,* 76 F.3d 530, 553 (4th Cir. 1996).

the Court, "[I]t is this requirement that we believe will deter creditors or other parties from freely ignoring court-ordered deadlines…." 507 U.S. at 395, 113 S.Ct. at 1499, 123 L.Ed 2d at 90.

The determination of what is excusable (or not) is an equity based analysis that calls for an examination of all the relevant circumstances surrounding the omission. *Pioneer,* 507 U.S. at 395, 113 S.Ct. at 1498, 123 L.Ed 2d at 89. These factors include, the danger of prejudice to the opposing party, the length of the delay and its impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.[6] 507 U.S. at 388, 113 S.Ct. at 1493, 123 L.Ed 2d at 83.

In the Motion to Vacate, the Defendants devoted only a single paragraph to their explanation of why excusable neglect should apply to vacate the Default Judgment. They wrote:

> The Defendants were unable to immediately respond to the Complaint nor were they able to timely object to the entry of default due to Defendant Tekmen being a layman and his complete unfamiliarity with bankruptcy procedures. This ignorance of procedure was manifested by the fact that Defendant Tekmen did attempt to answer the Plaintiff's complaint, albeit informally, by returning the documents demanded and by sending a letter to Plaintiff's counsel explaining the circumstances that led to him stopping payment on the Check.

The simple fact that Mr. Tekmen is a non-lawyer does not distinguish him from any of the other thousands of defendant litigants who are also unrepresented at the commencement of a civil action.[7] The Summons clearly and conspicuously explained what needed to be done and the Defendants do not contend that Mr. Tekmen could not understand the words used.

---

[6] The Court did not indicate whether more or less weight should be given to any one factor.

[7] Indeed, there is authority in this Circuit for the proposition that an unrepresented, defaulting party may be in a worse position than a blameless party represented by a careless attorney. *Compare U.S. v. Moradi*, 673 F.2d 725 (4th Cir. 1982) with *Park Corp. v. Lexington Ins. Co.*, 812 F2d 894 (4th Cir. 1987). *See also Augusta Fibreglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988) (reasoning that the district court erred

The Motion to Vacate was therefore meritless to the extent it asserted that Mr. Tekmen's status as a non-lawyer, and his "unfamiliarity with bankruptcy procedures" amounted to excusable neglect. In *Thompson*, s*upra*, the Court incorporated and relied upon the Supreme Court's statement that, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect'". 76 F.3d at 534. Thus, if Mr. Tekmen merely did not understand what he had to do that misunderstanding does not equal excusable neglect.

In any event, while Mr. Tekmen did not file an answer to the Complaint he did hire Counsel immediately after he received notice of the Defaults.[8] Yet, the Motion to Vacate offers no explanation at all for the Defendants' failure to act from October 12, 2009 – the date Mr. Tekmen hired Counsel – until the filing of the Motion to Vacate on January 12, 2010.

At the hearing on the Motion to Vacate, the Court made that observation and granted the Defendants additional time to supplement their position to explain whether the doctrine applied for the period after Counsel was hired and before the Motion to Vacate was filed.[9] Put another way, the Court wanted to know why Counsel did nothing for three months and why his lack of diligence should be excused.

On March 16, 2010, Counsel filed an Affirmation of Roland Gary Jones in Support of Defendants' Motion to Vacate Entry of Default (Affirmation) (Dkt. No. 24). In pertinent part, the Affirmation states:

---

by failing to distinguish between the fault of a party and the fault of the party's attorney and finding that a party should not be disadvantaged by the errors of her attorney).

[8] Because he hired Counsel at that time, Mr. Tekmen's non-lawyer status would therefore be irrelevant to his ability to object to the Defaults, contrary to the assertion in the Motion to Vacate.

[9] Even after Counsel was hired, almost a month passed before the Default Judgment was entered on the docket. During that month, contesting the Complaint would have been simple and easy.

> I was retained after the clerical default was entered. Given the complexities of the case and much back and forth with the defendant, we did not finish drafting a motion to vacate until approximately December 15, 2009.
>
> On December 15, 2009, I put the Plaintiff on notice that Defendant intended to file a motion to vacate a default and reached an agreement with the Plaintiff to toll further proceedings against the Defendant for a period of one month while the parties attempted to settle the case.

On March 24, 2010, Plaintiff filed a Response to Affirmation of Roland Gary Jones in Support of Defendants' Motion to Vacate Entry of Default (Response to Affirmation) (Dkt. No. 28) averring as follows: "On December 15, 2009, Defendants' counsel sent undersigned an email containing the following: 'per our verbal agreement, you will not seek to execute for 30 days while we try to resolve it'. No meaningful settlement negotiations took place thereafter…." The Response to Affirmation was the last paper filed and the quoted representation was not disputed by either the Defendants or Counsel. An agreement not to execute a judgment falls well short of an agreement to vacate a default, permit a late answer and allow litigation on the merits.

While the Court is mindful that defaults are ill-favored, *Augusta*, 843 F.2d at 810, neither the conduct of the Defendants nor that of Counsel satisfies the standard of excusable neglect such that the Default Judgment should be vacated.[10] The facts indicate that rather than a careless, but forgivable, error both the Complaint and the Defaults were 'freely ignored' by the Defendants and their counsel. This is so because the reasons why the Defendants failed to act with simple diligence to either answer the Complaint or respond to the Defaults in a timely

---

[10] In *Augusta*, the Court stated, "when the party is blameless, his attorney's negligence qualifies as a 'mistake' or as 'excusable neglect' under Rule 60(b)(1)." 843 F.2d at 811. Were it not for *Pioneer* and *Thompson*, and were Mr. Tekmen wholly blame-free, that statement alone might be enough to persuade this Court to vacate the Default Judgment. However, a close review of *Pioneer* and *Thompson* convinces this Court that those cases have undermined the liberal view espoused in *Augusta* at least insofar as excusable neglect is claimed as the basis for vacatur. This point will be addressed in greater detail, *infra*.

fashion remain unexplained.  Neither the Defendants nor Counsel acted with any alacrity to formally deal with the litigation and no good reason why is offered.

It appears to the Court that the underlying dispute was not at all complex.  Defendants paid the Plaintiff by check and then stopped payment.  The question would then be whether there was a legitimate basis for doing so and in that regard, Defendants claim the Plaintiff breached the contract.  But whether the dispute was complex or not Counsel admits in the Affirmation that a motion to vacate was drafted by December 15, 2009.  This was already two months after Counsel was hired yet the paper was not filed for about another month.

The *Pioneer* case does not stand for the proposition that a party has the option of doing nothing only to claim excusable neglect when they finally rouse themselves into action.  Instead, *Pioneer* does stand for the principle that a party's carelessness or oversight may be excused *if* there is some good reason that merits a second chance. The Defendants have not offered a good reason.  It is undisputed that Counsel did nothing to contest the Default Judgment until well after it was entered.  He was aware of all the relevant circumstances yet seemingly made a conscious choice to do nothing as the weeks passed.  At best, he brokered a brief, out of court, stay of execution.  But that is irrelevant to his obligation to act promptly in court, with knowledge of the circumstances, and also reflects an implied acknowledgement of the validity of the judgment. *See In re Valley Food Services, LLC*, 377 B.R. 207, 214 (8th Cir. BAP 2007) (willful flouting of the requirements contained in the rules of civil procedure weighs heavily against a finding of excusable neglect); *Warfield v. Byron*, 436 F.3d 551, 556 (5th Cir. 2006); *S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998); *Calumet Lumber, Inc. v. Mid-America Indus., Inc.*, 103 F.3d 612, 614-15 (7th Cir. 1997).

In *Pioneer*, the Court refers to the statement in *Link v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) that "clients must be held accountable for the acts and omissions of their attorneys."  In *Wabash*, the Court reasoned that where a party voluntarily chooses his attorney as his representative, he cannot later avoid the consequences of his choice. *Id.* 370 U.S. at 634, 82 S. Ct. at 1390, 8 L.Ed 2d at 740.  *See also Robinson v. Wix Filtration Corporation LLC*, 599 F.3d 403, 408-09 (4th Cir. 2010) (finding that appellant's counsel had seemingly made a conscious choice not to take any action but that "the consequences stemming from this choice, however, cannot be classified as manifestly unjust towards [a]ppellant"); *Thompson*, 76 F.3d at 533 (noting that the Supreme Court specifically observed that it was "appropriate" to hold a client accountable for the mistakes of counsel).  In this case, there was a responsibility to act with diligence and that responsibility was not met.

Moreover, this Court questions whether the liberal doctrine as expressed by the Fourth Circuit in *Augusta* continues to carry as much weight in this context in view of the subsequent holdings of *Pioneer*, *Thompson* and *Robinson*.  *Augusta* seemingly lays down a rule that will always find excusable neglect if the fault lies with the attorney.  843 F.2d at 811.  However, that reasoning is at odds with the stricter formulations set forth in the later cases that, in the case of *Pioneer*, defines the excusable neglect standard and, with respect to all three post-*Augusta* decisions, confirms that a party is bound by their attorney's actions.

As for *Pioneer's* remaining equitable factors – danger of prejudice, length of the delay, reason for the delay and good faith – the Defendants have not provided any compelling reason why the Plaintiff, a Debtor-in-Possession with limited resources, should now be required to expend additional time and money to re-litigate the case when the Defendants were given prompt

and specific notice of all filings and deadlines yet did nothing in a timely fashion. While it is irrelevant as a matter of principle, the Court is mindful of the fact that a relatively nominal amount of money is involved. It would cost the Debtor-Plaintiff's Estate at least as much as the amount in controversy to re-litigate this matter and that would be prejudicial to the Estate and its creditors in this reorganization context where scarce resources are the reality and efficiency should be the rule.

Moreover, the records turned over to the Defendants were, in part, intellectual property of the Estate. The Defendants have had them since then and whatever unique value they had to the Estate has surely been lost. Therefore, there would be significant prejudice to the Plaintiff if the Motion to Vacate was granted.

As regards the length of the delay, much of what has been written above applies to this factor. In the Affirmation, Counsel states that forty-five (45) days elapsed between the entry of the Default Judgment and his notification to Plaintiff's counsel that the Defendants intended to file a motion to vacate default. However, there were seventy (70) days of inactivity on the docket from the entry of the Default Judgment until January 12, 2010 when the Motion to Vacate was finally filed. The Affirmation avers, without specific examples, that the delay was due to the "complexities of the case." However, Counsel also avers that he finished drafting the Motion to Vacate on approximately December 15, 2009. No explanation – other than the agreement not to execute – is given as to why the Motion to Vacate was not filed until nearly a month later and, moreover, why it took two months to complete.

As for the question of good faith, it appears that the Defendants simply decided to capitulate to the Default Judgment with the hope they could negotiate a more favorable result.

However, they do not dispute that they did nothing meaningful to achieve that end. The Defendants could have easily taken simple steps to contest the Plaintiff's claim early on, even before the Default Judgment was entered. The fact that they did not, and proceeded as they did, while not necessarily amounting to bad faith is certainly not good faith. All in all, it simply appears that the Defendants and their Counsel were lax in the extreme and did not want to formally deal with this Adversary Proceeding until they decided they had to.

As the Fourth Circuit noted, "'Excusable neglect' is not easily demonstrated, nor was it intended to be." *Thompson,* 76 F.3d at 534. Accordingly, we find and conclude that the failure of the Defendants to file an answer and thereafter promptly address the Default Judgment, while neglectful was not excusable.[11]

A separate order memorializing these findings shall issue.

---

[11] Defendants also averred in the Motion that the Complaint's subject matter presented a non-core, breach of contract issue and therefore they should have been permitted to seek removal of this matter to the District Court. However, 28 U.S.C. §§ 157(b)(3) and (d) require that a motion either seeking a determination by the bankruptcy court that the matter is non-core, or to have the reference withdrawn to the district court, must be timely. *In re Johnson*, 960 F.2d 396, 403 (4th Cir. 1992) (Party may impliedly consent to bankruptcy court's exercise of non-core jurisdiction if they fail to make a timely objection). Whether the Complaint presented a core or non-core claim, it is certainly clear that the Defendants did not raise their objection in a timely manner.